UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

VINCENT DELUCA,

        Plaintiff,

v.

BANK OF TOKYO-MITSUBISHI UFJ, LTD.

        Defendant.

------------------------------x

Civil Case No. 06-CV-5474 (JGK)

## DEFENDANT BANK OF TOKYO-MITSUBISHI UFJ, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER

Dated: New York, New York
      July 3, 2007

Of Counsel:

    Dov Kesselman (DK-6571)
    Gloria Galant (GG-2818)

SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Defendant Bank of Tokyo-Mitsubishi UFJ, Ltd.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

      A.      The April 27, 2007 Notice Of Deposition For Mr. Omori ........................... 3

      B.      The Yamawaki and Hasek Depositions ...................................................... 4

ARGUMENT ........................................................................................................................ 8

I. PLAINTIFF'S DEMAND TO DEPOSE BTMU'S CEO FOR THE AMERICAS IS IMPROPER AND SHOULD BE DENIED PURSUANT TO RULE 26(B)(2) .................... 8

      A.      Plaintiff's Demand For The Deposition Of Mr. Omori Is Improper Because Mr. Omori Does Not Have Personal Knowledge of Any Relevant Information ............ 8

      B.      Plaintiff's Demand For The Deposition Of Mr. Omori Is Improper Because Mr. Omori Does Not Have Any Unique Knowledge ................................................... 11

      C.      Plaintiff's Demand For The Deposition Of Mr. Omori Is Motivated By An Intent To Harass And Unduly Disrupt BTMU's Business Operations ........................... 12

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

### CASES

Burns v. Bank of America,
  No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ................11, 12

Consolidated Rail Corp. v. Primary Indus. Corp.,
  Nos. 92 Civ. 4927 & 92 Civ. 6313 (PNL), 1993 WL 364471
  (S.D.N.Y. Sept. 10, 1993) ................8, 11

Filetech, S.A. v. France Telecom, S.A.,
  No. 95 Civ. 1848 (CSH), 1999 WL 92517 (S.D.N.Y. Feb. 17, 1999) ................11

Malletier v. Dooney & Bourke, Inc.,
  No. 04 Civ. 5316 (RMB) (MHD), 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006) ................10

In re Ski Train Fire of November 11, 2000 Kaprun Austria,
  No. MDL 1428 (SAS) (THK), 2006 WL 1328259 (S.D.N.Y. May 16, 2006) ................8, 11

Speadmark, Inc. v. Federated Dep't Stores, Inc.,
  176 F.R.D. 116 (S.D.N.Y. 1997) ................10

Treppel v. Biovail Corp.,
  No. 03 Civ. 3002 (PKL) (JCF), 2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) ................9, 12

### STATUTES

Fed. R. Civ. P. 26(b)(2) ................12

Fed. R. Civ. P. 26(c) ................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                        :
VINCENT P. DELUCA,                      :
                                        :
                        Plaintiff,      :
                                        :  Civil Case No. 06-CV-5474 (JGK)
            v.                          :
                                        :
BANK OF TOKYO-MITSUBISHI UFJ, LTD.,     :
                                        :
                        Defendant.      :
                                        :
----------------------------------------x

# DEFENDANT BANK OF TOKYO-MITSUBISHI UFJ, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER

## PRELIMINARY STATEMENT

Defendant Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") respectfully submits this memorandum of law in support of its Motion for a Protective Order barring the Plaintiff from deposing BTMU's Chief Executive Officer for the Americas, Mr. Kyota Omori ("Omori"), pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, on the grounds that he has no involvement to this case, and Plaintiff's effort to depose BTMU's senior-most officer in the United States is nothing more than an effort to impose an extraordinary burden on BTMU by requiring it to waste its CEO's time.

Indeed, Plaintiff's attempt to drag Mr. Omori into this case is made notwithstanding the uncontradicted evidence — confirmed by Plaintiff's counsel himself during discovery — that Mr. Omori has only the most tangential connection to this case. The evidence, both in sworn deposition testimony and documentary evidence, establishes that: (1) the decision to terminate Plaintiff's employment was made by (a) Mr. Yamawaki, the head of the Investment Banking

1

NY1 26473737.2

division in the Americas, (b) upon the recommendations of Mr. Thomas Hasek, BTMU's Head of Human Resources in New York, and Ms. Beryl Lewis, the Human Resources representative responsible for the Investment Banking division in the United States, and (c) with approvals from Mr. Yamawaki's superiors in BTMU's headquarters in Tokyo, Japan; (2) the Investment Banking division in the Americas, of which Mr. Deluca was a part and which Mr. Yamawaki headed, did <u>not</u> report into Mr. Omori as CEO of the Americas, but instead reported directly into BTMU's headquarters in Tokyo, Japan; (3) Mr. Omori was <u>not</u> involved in the decision-making process for Plaintiff's termination; and (4) Mr. Omori was not included on e-mail correspondence between Mr. Yamawaki and his superiors in BTMU's headquarters discussing Mr. Deluca's termination. Mr. Omori has also submitted a sworn affidavit to this effect with this motion. Indeed, the evidence makes clear that the <u>only</u> tangential connection of Mr. Omori to this termination is that Mr. Yamawaki, as a courtesy given Mr. Omori's position of CEO for the Americas, informed Mr. Omori of the decision to terminate Mr. Deluca, and later informed him in an email that the termination had taken place and that it appeared at the time that Mr. Deluca had agreed to resign (which he later opted not to do).

Plaintiff has already deposed Mr. Yamawaki, Mr. Hasek, Ms. Lewis, and other BTMU current and former employees, and had the option of deposing numerous others that he chose not to. (Kesselman Decl. ¶ 4). Plaintiff's decision to re-serve a notice of deposition for Mr. Omori is nothing short of abusive and an unnecessary disruption to BTMU's business, and fails to show any basis upon which such a deposition is appropriate. Mr. Omori did not make the decision to terminate the Plaintiff's employment nor did he contribute to the decision in any substantive way; accordingly, he does not have any personal knowledge that could be characterized as relevant. The repeated prior depositions taken by Plaintiff make this clear. Moreover, any

2

NY1 26473737.2

remotely relevant information that Mr. Omori might provide would be cumulative and duplicative of the testimony provided by the other BTMU senior executives already deposed by Plaintiff, including the principal decision-makers, Mr. Yamawaki, Mr. Hasek, and Ms. Lewis. Indeed, the courts of this Circuit have repeatedly granted protective orders under facts similar to those here to prevent the unnecessary burden of a deposition of a senior executive with only the most tangential connection to a case and whose testimony could — at best — be merely duplicative of testimony already obtained from other witnesses. Significantly, the Southern District confirmed this position in a decision as recently as this past month.

For these reasons, and as set forth more fully below, BTMU respectfully requests that the Court grant this Motion for a Protective Order in its entirety.

## STATEMENT OF FACTS

### A. The April 27, 2007 Notice Of Deposition For Mr. Omori

Discovery in this case commenced on November 27, 2006. On April 27, Plaintiff's counsel noticed a total of five depositions of BTMU employees to take place in or around early June 2007. (Kesselman Decl. Exh. A). These five employees were corporate executives of BTMU, including Mr. Mitsuhiro Yamawaki, BTMU's General Manager and head of the Investment Banking division in the Americas (and in which Mr. Deluca worked), Mr. Koji Baba, BTMU's Senior Vice President and Group Head for the Investment Banking division in the Americas (and who was the subject of a highly disrespectful and racially insensitive email sent by Mr. Deluca that prompted the discussions of Mr. Deluca's termination), Mr. Thomas Hasek, BTMU's Head of Human Resources in New York, Mr. Takashi Bamba, the former General Manager of BTMU's Investment Banking division in the Americas (Mr. Yamawaki's predecessor), and lastly, Mr. Kyota Omori, BTMU's Chief Executive Officer for the Americas.

3

NY1 26473737.2

Despite the breadth of Plaintiff's discovery demands, BTMU objected only to Plaintiff's demand for a deposition of Mr. Omori.[1] Specifically, BTMU explained that Mr. Omori was neither the decision-maker nor was he substantively involved in Plaintiff's termination, and advised that given that Plaintiff would be taking the depositions of Mr. Yamawaki and Mr. Hasek, who were the relevant decision-makers with respect to Plaintiff's termination, together with other depositions, BTMU would object and move for a protective order with respect to Mr. Omori if the notice was not withdrawn. (Kesselman Decl. ¶ 3). Accordingly, on May 4, 2007, Plaintiff and BTMU reached a preliminary resolution: Plaintiff would withdraw the Notice of Deposition with respect to Mr. Omori pending the depositions of Mr. Yamawaki and Mr. Hasek. (Kesselman Decl. Exh. B). In the event that these depositions somehow established Mr. Omori's involvement in the termination of Plaintiff's employment, Plaintiff would not be prejudiced in his attempt to re-notice Mr. Omori for deposition at a later date. (Id.).

### B. The Yamawaki and Hasek Depositions

Pursuant to the agreement reached on May 4, 2007, Plaintiff moved forward with the depositions of Mr. Yamawaki and Mr. Hasek on June 11, 2007 and June 6, 2007, respectively. Plaintiff also took the deposition of Ms. Beryl Lewis, the Human Resources representative responsible for the Investment Banking division in the Americas, on June 22, 2007.[2] Uniformly,

---

[1] Mr. Baba was employed and lived in South Africa at the time of the notice of deposition, and BTMU made him available, in accordance with the Court's order dated May 31, 2007, for deposition in South Africa. Mr. Bamba was no longer an employee of BTMU and resided in Japan at the time of the notice of deposition, but BTMU was prepared to attend any deposition of him that Plaintiff was able to schedule. Plaintiff opted not to take either of their depositions. Indeed, the evidence subsequently developed in discovery confirmed that it was Mr. Yamawaki, Mr. Hasek, and Ms. Lewis that were primarily involved in the decision to terminate Mr. Deluca's employment.

[2] In addition, Plaintiff also took the deposition of Mr. Masaru Kuroda, the Group Head for the Investment Banking division after Mr. Deluca's termination, on June 12, 2007. (Kesselman Decl. ¶ 4).

4

each of these deponents testified that Mr. Omori was not involved in the decision-making with respect to Plaintiff's employment, or in the case of Mr. Hasek and Ms. Lewis, that they were unaware of involvement by Mr. Omori in the termination decision. Mr. Yamawaki testified that in making the decision to terminate Plaintiff's employment, he first obtained the recommendations of Human Resources including Mr. Hasek, Head of Human Resources in New York, and Beryl Lewis, BTMU's Human Resources representative responsible for its Investment Banking division in the Americas, consulted with BTMU's in house counsel, and then made his recommendation to BTMU's Global Head of Securitization in Tokyo, Mr. Tetsuya Satou, and the Global Head of Investment Banking in Japan, Mr. Akigusa. (Deposition of Mitsuhiro Yamawaki ("Yamawaki Tr.") 115:2-116:16, 118:13-119:24).[3] Mr. Yamawaki further testified that he exchanged a series of emails with his superiors in Tokyo for approval of his recommendation to terminate, which approval was ultimately received from Mr. Akigusa. (Yamawaki Tr. 161:20-162:15). When Plaintiff's counsel specifically asked Mr. Yamawaki whether Mr. Satou requested the approval of anyone other than Mr. Akigusa, Mr. Yamawaki testified that no other approvals were required. (Yamawaki Tr. 162:7-15). Copies of those emails leading up to the date of Plaintiff's termination show that the correspondence did not include Mr. Omori. (Kesselman Decl. ¶ 8, Exhs. F-I).

Mr. Yamawaki further testified that he reported directly to Mr. Satou and Mr. Akigusa in BTMU's headquarters in Japan, and that the Investment Banking division of which he was a part did not report to Mr. Omori. (Yamawaki Tr. 162:16-163:11). Moreover, Mr. Yamawaki

---

[3]  Relevant pages of Mr. Yamawaki's deposition testimony is attached as Exhibit C to the Kesselman Declaration. Citations to the transcript are shown as "Yamawaki Tr., Page:Line". Relevant pages of Mr. Hasek's and Ms. Lewis' deposition testimony are attached as Exhibits D and E, respectively, to the Kesselman Declaration.

5

explicitly testified that he did not require Mr. Omori's approval for the termination of Mr. Deluca. Indeed, Plaintiff's counsel specifically asked about this relationship:

> Q. <u>Do you know whether Mr. Satou or Mr. Akigusa had any type of discussions with Mr. Omori on the subject of Mr. De Luca's termination?</u>
>
> A. <u>I don't think so.</u>
>
> Q. What leads you to think not?
>
> A. Can you repeat your question; what leads me --
>
> Q. <u>What causes you to say you don't think so?</u>
>
> A. <u>Because there is no direct reporting or business lines between them.</u>
>
> Q. **As you understood it, you did not need Mr. Omori's approval?**
>
> A. **The answer is yes. I know I did not require the approval of Mr. Omori I mean.**
>
> Q. You obtained all of the approvals that you felt that you needed; is that correct?
>
> A. Yes.

(Yamawaki Tr. 162:16-163:11)

The extent of Mr. Omori's involvement in Mr. Deluca's termination was a brief meeting prior to Mr. Deluca's termination on May 12, 2007 in which Mr. Yamawaki informed Mr. Omori of his decision to terminate Mr. Deluca, showing Mr. Omori the email, advising that he had made the decision to terminate after having sought the advice of Human Resources and Legal, and that he was in the process of obtaining approval from Tokyo. (Yamawaki Tr. at 179:19-180:10). Mr. Omori expressed no instructions other than to say that "he would leave it to the people who are responsible to handle this situation and also was mentioned to respect the advice of human resources people and legal people." (Yamawaki Tr. 180:14-21). Tellingly, Mr. Omori did <u>not</u> ask to be kept informed of the decision regarding Mr. Deluca's termination. (Yamawaki Tr. 169:22-25).

6

Mr. Yamawaki explained that although he had no reporting line to Mr. Omori, he felt that he had the responsibility to at least "inform" Mr. Omori of the termination since, as CEO of the Americas, Mr. Omori was responsible for "monitor[ing] and if necessary explain[ing] the bank's operations in the U.S.", and his decision could therefore impact Mr. Omori's role. (Yamawaki Tr. 170:11-20, 70:10-71:19).

Other than the single meeting at which he was informed of Mr. Yamawaki's decision to terminate Mr. Deluca and that Mr. Yamawaki was seeking the approval of his superiors in the Bank's headquarters in Japan, Mr. Omori's only other connection is that Mr. Yamawaki emailed him on May 12, 2005 to inform him that he had met with Mr. Deluca to inform him of the deposition, and Mr. Omori and numerous others on one other e-mail from Mr. Yamawaki dated May 16, 2007 to advise them on the sequence of events after the termination. (Yamawaki Tr. 183:23-184:25: Kesselman Decl. Exhs. J-K). Again, Mr. Omori did not ask Mr. Yamawaki to do this. (Yamawaki Tr. 184:23-25). Mr. Hasek and Ms. Lewis were not aware of any involvement by Mr. Omori in the decision to terminate Plaintiff's employment. (Hasek Tr. 236:13-20, 245:10-12, 247:14-23; Lewis Tr. 140:5-7).

At bottom, then, Mr. Omori had <u>no</u> involvement in the decision to terminate Mr. Deluca, and his only connection to this case is that he was advised in passing by Mr. Yamawaki that it was going to be taking place. Mr. Omori has no personal knowledge of the circumstances of Mr. Deluca's termination — to the contrary, the Investment Banking division did not even ultimately report up to Mr. Omori, and as such he played no role in this case. A deposition of Mr. Omori will do nothing more than to impose a significant interruption to BTMU while yielding nothing more than — at best — duplicative hearsay testimony of what Mr. Yamawaki told him.

## ARGUMENT

### I.

### PLAINTIFF'S DEMAND TO DEPOSE BTMU'S CEO FOR THE AMERICAS IS IMPROPER AND SHOULD BE DENIED PURSUANT TO RULE 26(B)(2)

Plaintiff seeks to depose BTMU's highest ranking officer in the United States, Chief Executive Officer for the Americas, Mr. Kyota Omori, regarding the decision to terminate Plaintiff's employment. For the reasons set forth below, this Court should grant this Motion and deny Plaintiff's attempt to harass BTMU's CEO and unduly disrupt BTMU's business.

**A.    Plaintiff's Demand For The Deposition Of Mr. Omori Is Improper Because Mr. Omori Does Not Have Personal Knowledge of Any Relevant Information**

The Federal Rules of Civil Procedure empower New York courts to limit discovery. See Fed. R. Civ. P. 26(b)(2). In determining whether to limit discovery, New York courts engage in a balancing test, weighing the burden and expense of the proposed discovery against the benefits that may result. Id. Because of the potential burden, when the proposed discovery concerns the deposition of a corporate executive, New York courts are hesitant to permit the same "unless [the executive has] personal knowledge of relevant facts or some unique knowledge that is relevant to the action." See In re Ski Train Fire of November 11, 2000 Kaprun Aus., No. MDL 1428 (SAS) (THK), 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (Tab 1)[4]; Consolidated Rail Corp. v. Primary Indus. Corp., Nos. 92 Civ. 4927 & 92 Civ. 6313 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (Tab 2). Indeed, because of an executive's unique position within a corporate hierarchy, unless it can be demonstrated that a corporate official has "some unique knowledge pertinent to the issues" in the case, New York courts will preclude a redundant deposition and limit the depositions to those of other witnesses with the same knowledge. See,

---

[4]    For the convenience of the Court, unreported cases are attached to this memorandum of law as Tabs 1 through 6.

8

e.g., Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL) (JCF), 2006 WL 468314, at *3 (S.D.N.Y. Feb. 28, 2006) (Tab 3).

Here, the record demands the conclusion that, not only would the disruptive consequences of requiring a deposition of Mr. Omori pose a significant burden, but more importantly, the benefit of such a duplicative deposition would be a near nullity. Perhaps most tellingly in this regard is the fact that BTMU's Investment Banking Division for the Americas, the division within which Plaintiff worked and from where Plaintiff's allegations arise, reported directly into BTMU's headquarters in Japan and not to Mr. Omori in the United States. (Yamawaki Tr. 162:16-163:11; Omori Aff. ¶ 3).[5] As such, BTMU's corporate structure did not require Mr. Yamawaki to even consult with the proposed deponent as to Plaintiff's termination. (Yamawaki Tr. 162:16-163:11; Omori Aff. ¶ 3).[6] Accordingly, Mr. Omori was not even in a position in which he would have been expected to have relevant personal knowledge to which he could testify at a deposition. See Treppel, 2006 WL 468314, at *3 (declining to permit the deposition of the defendant's CEO because there existed no basis for attributing personal knowledge of the relevant facts to him).

Moreover, the record developed during the depositions of the four other executives taken by Plaintiff lend further support to Mr. Omori's distance from the facts. For instance, Mr. Yamawaki testified at his deposition that he made the decision to terminate Plaintiff's employment without any input from Mr. Omori. (Yamawaki Tr. 162:7-163:11). Indeed, nowhere in Mr. Yamawaki's testimony did he indicate that Mr. Omori even offered a minimal

---

[5]  All references to the "Omori Aff. ¶ __" are to the Affidavit of Kyota Omori, sworn to on July 3, 2007, and attached to the Notice of Motion.

[6]  Mr. Yamawaki's emails to Mr. Satou and Mr. Akigusa in Japan seeking final approval concerning Plaintiff's termination – and not Mr. Omori – further confirm this reporting structure. (Kesselman Decl. Exhs. F-I).

9

opinion on the decision. Instead, the record bears out that Mr. Omori's sole involvement in the process was to suggest that Mr. Yamawaki refer the matter to BTMU's Legal and Human Resources Departments for resolution. (Yamawaki Tr. 180:14-21).

In addition, while Mr. Yamawaki testified that he consulted with BTMU's Legal and Human Resources departments, its Global Head of Securitization in Tokyo, Mr. Tetsuya Satou, and its Global Head of Investment Banking, Mr. Akigusa, with regard to his decision, Mr. Omori was not included in any of these discussions. (Yamawaki Tr. 115:2-116:16, 118:13-119:24; Omori Aff. ¶¶ 4-5). Mr. Yamawaki even declined to include Mr. Omori on the emails he sent to BTMU's Japan-based personnel regarding his potential decision. (Kesselman Decl. Exhs. F-I). New York courts have consistently declined to subject executives to depositions holding a closer association to the facts than here. Compare Malletier v. Dooney & Bourke, Inc., No. 04 Civ. 5316 (RMB) (MHD), 2006 WL 3476735, at *11-12 (S.D.N.Y. Nov. 30, 2006) (refusing to require that executive testify because of his "second-hand" knowledge of the facts in dispute) (Tab 4) with Speadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 116, 117-18 (S.D.N.Y. 1997) (requiring CEO to testify because of his presence and participation in numerous meetings regarding disputed contract).

Indeed, even the most liberal interpretation of Mr. Omori's involvement in the decision-making process reveals that, at best, Mr. Yamawaki kept Mr. Omori appraised of the decisions that Mr. Yamawaki had himself already made. (Yamawaki Tr. 70-10-71:14, 170:11-20, 179:19-180:10; Omori Aff. ¶ 4, 6). Thus, in seeking Mr. Omori's deposition, Plaintiff simply disregards the substantial testimony to the contrary and relies on an unsupported presumption that Mr. Omori possesses personal knowledge of the decision to terminate Plaintiff's employment. However, New York courts, as recently as in the last month, have routinely declined to subject

corporate executives to depositions where the deposition is premised merely upon an assumption of personal knowledge. See Burns v. Bank of America, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437, at *4 (S.D.N.Y. June 4, 2007) (declining to credit argument that there is a general presumption that proposed deponent, the defendant's general counsel, had personal knowledge of all matters taking place in the legal department) (Tab 5); see also In re Ski Train, 2006 WL 1328259, at *10 (denying motion to compel deposition of retired CEO because he was not likely to have personal knowledge of facts).

For these reasons, this Court should grant Defendant's Motion for a Protective Order precluding the deposition of Mr. Omori.

**B.      Plaintiff's Demand For The Deposition Of Mr. Omori Is Improper Because Mr. Omori Does Not Have Any Unique Knowledge**

Even assuming, arguendo, that Mr. Omori held any relevant knowledge, the same could hardly be characterized as "unique" in light of the testimony already solicited by Plaintiff from the four other executives previously deposed. New York courts will not compel the deposition of an executive when there are alternative, lower-level executives capable of testifying to the same information. See Burns, 2007 WL 1589437, at *4 (precluding deposition of CEO because of testimony of another employee with knowledge of facts); see also Filetech, S.A. v. France Telecom, S.A., No. 95 Civ. 1848 (CSH), 1999 WL 92517, at *1-2 (S.D.N.Y. Feb. 17, 1999) (same) (Tab 6). Here, Plaintiff already deposed Mr. Yamawaki and Mr. Hasek, the very individuals responsible for making the decision prompting Plaintiff's claim. Accordingly, any proposed deposition testimony of BTMU's highest ranking executive in the United States would be, at best, duplicative. See Consolidated Rail Corp. 1993 WL 364471, at *1 (noting that it would be redundant to depose an executive when lower-ranking executive has the same information).

11

For these reasons, this Court should grant Defendant's Motion for a Protective Order precluding the deposition of Mr. Omori.

### C. Plaintiff's Demand For The Deposition Of Mr. Omori Is Motivated By An Intent To Harass And Unduly Disrupt BTMU's Business Operations

In determining whether to subject a corporate executive to a lengthy deposition, New York courts also consider the extent to which the proposed deposition is motivated by an intent to harass the deponent or disrupt the business operations of a party. See, e.g., Burns, 2007 WL 1589437, at *3.

Here, the negligible benefit, if any, to be gained from deposing Mr. Omori, as well as the timing of the Notice of Deposition, support an inference that Plaintiff's intent is to harass BTMU's CEO and disrupt its business operations. For there reasons set forth more fully in Point I. A. and Point I. B., supra, the record bears out that Mr. Omori does not possess any relevant or unique knowledge that could support Plaintiff's tentative case. In short, there is no benefit to be derived from Mr. Omori's deposition as contemplated by the Federal Rules. See Fed. R. Civ. P. 26(b)(2). Accordingly, in the absence of a productive purpose, logic and reason support the inference that Plaintiff's motivation in pursing Mr. Omori's deposition is one of harassment. Irrespective of the intent, this deposition will clearly interfere with and place an unnecessary burden on Mr. Omori's schedule and therefore, in light of the lack of any legitimate need for the deposition, should be precluded. (Omori Aff. ¶ 8.) Uniformly, New York courts refuse to permit the depositions of corporate executives under such impermissible circumstances. See, e.g., Burns, 2007 WL 1589437, at *3 (noting that the potential for harassment is a relevant consideration); see also Treppel, 2006 WL 468314, at *2 (noting potential for depositions to become a "tool for harassment").

## CONCLUSION

New York courts have placed limits on a party's ability to use the Federal Rules of Civil Procedure in the search for information relevant to a claim. While there is certainly no exemption from depositions for high-level corporate executives, New York courts routinely exercise their power when a party seeks to depose a corporate executive under circumstances such as those at issue here. Here, the record unassailably establishes Mr. Omori's ignorance and lack of personal knowledge of the facts surrounding the decision to terminate Plaintiff's employment. Moreover, Plaintiff has already deposed four executives and officers of BTMU – including those responsible for the termination of his employment – and gathered all available and relevant information in support of his claim. Succinctly stated, there is nothing further for Plaintiff to gain by subjecting BTMU's Chief Executive Officer for the Americas to a lengthy deposition other than succeeding in an apparent quest to harass BTMU's highest ranking United States officer.

For all of the foregoing reasons, BTMU respectfully requests that the Court grant its Motion in its entirety, issue a protective order, and grant such other and further relief (including the costs of this motion) as the Court may deem just and proper.

Dated: New York, New York
      July 3, 2007

                                    Respectfully submitted,

                                    SEYFARTH SHAW LLP

                                    By  s/ Dov Kesselman
                                        Dov Kesselman (DK-6571)
                                        Gloria Galant (GG-2818)
                                        1270 Avenue of the Americas, Suite 2500
                                        New York, New York 10020-1801
                                        (212) 218-5500

                                    Attorneys for Defendant Bank of Tokyo-Mitsubishi UFJ, Ltd.